**State of HAWAII, By and Through its ATTORNEY GENERAL, Plaintiff,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY; James Lee Witt, Director, Federal Emergency Management Agency; Lacy E. Sutter, Executive Associate Director, Federal Emergency Management Agency; Martha Z. Whetsone, Regional Director, Region IX, Federal Emergency Management Agency; Gary D. Johnson, Chief Financial Officer, Federal Emergency Management Agency; George J. Opfer, Inspector General, Federal Emergency Management Agency, Defendants.**

**No. CIV. 99–00490SOM/FIY.**

United States District Court, D. Hawaii.

March 9, 2000.

disqualified for nine months from performing safety-sensitive duties.

Michael S. Vincent, Office of the Attorney General, State of Hawaii, Honolulu, HI, for Plaintiff.

Caroline L. Wolverton, United States Department of Justice, Federal Programs Branch, Civil Div., Washington, DC, Theodore G. Meeker, Office of the United States Attorney, Honolulu, HI, for Defendant.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE STATE'S CHALLENGE TO FEMA'S DUPLICATIVE BENEFITS INFORMATION; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT*

MOLLWAY, District Judge.

The background of this case was set forth in this court's Order Granting Plaintiff's Motion to Supplement Record; Order Granting in Part And Denying in Part Defendants' Motion to Dismiss or in the Alternative For Summary Judgment, entered on December 9, 1999 ("Order"). The discussions of the facts and legal standard in that Order are incorporated herein by reference. This court now concludes that Plaintiff State of Hawaii ("State") must pay Defendant Federal Emergency Management Agency ("FEMA") $12,102,524, as FEMA's determination that the State owed that amount was not arbitrary or capricious.[1]

I. *BACKGROUND.*

In the aftermath of Hurricane Iniki, the State received $45,722,627 as a total, lump-sum insurance settlement. Order at 6. Of that amount, $7,423,481 was paid to cover work done by the Army Corps of Engineers ("ACOE"). Order at 3 n. 4. FEMA, which had paid for the work done by the ACOE, demanded that the State reimburse FEMA for the actual cost of that

---

1. Where applicable, the court has rounded dollar figures to the nearest whole dollar.

work. FEMA said that the actual cost was $12,167,381, not the $7,423.481 of insurance proceeds allocated for the ACOE work. FEMA argued that the State's insurance policy covered the actual cost, although the State had settled for less. Order at 8.

The State argues that, pursuant to 5 U.S.C. § 706(2), it is not liable for $4,743,-900 of the $12,167,381 FEMA demands.[2] FEMA responds that this court should defer to FEMA's administrative determination that the State received duplicative benefits and therefore owes FEMA $12,-167,381.

This court has already determined that, under 42 U.S.C. § 5155(c), "the State must reimburse FEMA to the extent FEMA's assistance duplicated benefits 'available' for the same purpose from another source, including insurance benefits." Order at 19. There is no dispute that the primary insurance policy and the first excess insurance policy covered the lesser of the limit of liability or the actual cost of repairs or replacement of the damaged or destroyed property. Record, Vol. 5, at 289 (attachment to Home Insurance Company's Policy No. MLP 9106992) (the primary policy) ("Underwriter's liability for loss or damage shall not exceed the least of the following: a) The limit of liability provided for in this Policy. [or] b) The actual expenditure for repairs or replacement of the damaged or destroyed property"); Record, Vol. 3, at 350 (Continental Insurance's Excess Property Insurance Form) (the first excess policy) ("This insurance is subject to the same warranties, terms, definitions, and condi-

tions ... as are contained in or as may be added to the following policy ...: Home Insurance Co. MLP 910 6992").[3]

The State argues that the policies should be interpreted as limiting insurance "available" to that which was actually paid to the State in settlement with the insurance carriers. FEMA, on the other hand, has interpreted the policy language as standing for the proposition that insurance "available" in this case equals the actual costs FEMA paid to the ACOE. The matter is before this court on cross-motions for summary judgment, with FEMA seeking a judgment requiring the State to reimburse it $12,167,381 and the State seeking a ruling that it owes only $7,423,481.

Because FEMA's interpretation of the Policy was neither arbitrary nor capricious, summary judgment is granted in favor of FEMA. However, to the extent that FEMA made an error in addition, summary judgment is granted in favor of the State and the amount of the error must be subtracted from the amount FEMA claims is owing by the State.

## II. ANALYSIS.

### A. FEMA's Determination that the State's Insurance Policy Covered the Actual Costs of Repairs and Replacement Was Not Arbitrary or Capricious.

Pursuant to 5 U.S.C. § 706(2), FEMA's determination that the work done by the ACOE was fully covered by insurance is reviewed under the arbitrary and capricious standard.[4] The scope of review

---

**2.** As this court found in its previous order, there is no dispute that the State received $7,423,481 in insurance benefits for the work done by the ACOE. *See* Order at 3 n. 4.

**3.** The parties have previously stipulated to the authenticity of the Administrative Record, which is voluminous. When this court inquired about insurance coverage before the hearing on the motions, FEMA identified the Home Insurance Company policy provision in the Administrative record, which was the same policy identified in FEMA's papers.

The Continental policy provision was not identified until the hearing itself. The parties' agreement at the hearing as to insurance terms is critical to this court's ruling and causes the court to change the inclination it had announced before the hearing.

**4.** Section 706(2) states that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Assoc. of United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. *Id.* In reviewing an agency's explanation, this court considers whether the decision was based on a consideration of relevant factors and whether there has been a clear error in judgment. *Id.* An agency rule would be arbitrary and capricious if the agency relied on factors that Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that ran counter to the evidence before the agency, or rendered an explanation so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.*

■ FEMA concluded that "the insurers were liable to the State for actual costs of repair or replacement of damaged or destroyed property." *See* Supplemental Declaration of Jack Lankford (January 19, 2000) ¶ 2.[5] These amounts, FEMA says, were within the insurance policies' limits of $150 million. *See* Supp. Lankford Decl. ¶ 3(c)(6) ("Subject to the $150 million insurance coverage limit, the underwriter was liable for the actual cost of repair or replacement of damaged or destroyed public property"). FEMA apparently examined the insurance policies in making this determination. *See* Record, Vol. 5, at 289 (the primary insurance policy); Record, Vol. 3, at 350 (the first excess policy). It also appears that FEMA examined the insurance policies' exclusions in making this determination. *See* Record, Vol. 5, at

281–83 (Perils Excluded and Property Excluded); Record, Vol. 3, at 350 ("Exclusions: As per Primary Policy"); Supp. Lankford Decl. ¶ 3(c)(8) ("Exclusions under the policy included perils unrelated to hurricanes ... and were not applicable to the Corps' repairs to those buildings"). Because FEMA based its duplicative benefits determination on the language of the State's insurance policies, taking into account those policies' exclusions, FEMA's determination cannot be said to have been arbitrary or capricious. *See Motor Vehicle,* 463 U.S. at 43, 103 S.Ct. 2856.

Given the standard of review on these motions, the State's remaining arguments are not persuasive. For example, the State argues that it is arbitrary and capricious for FEMA to assume that insurance would pay the entire amount billed by the ACOE. The State compares this situation with insurance coverage for a damaged vehicle, saying that an insurance company may not pay to have a person's BMW fixed at the BMW dealership when it would be cheaper to repair that car at Joe's Auto Shop. In the present case, however, the State chose to settle with its insurance carriers. This court therefore cannot speculate as to whether those carriers might have paid the full cost of replacement as billed by the ACOE. FEMA concluded that the insurance policies covered the replacement costs of the damaged or destroyed buildings. Because the plain language of the insurance policies indicates that the full cost of replacement was available under those policies, FEMA's determination cannot be said to have been arbitrary or capricious.

FEMA's rejection of evidence supporting the State's $7,423,481 figure in favor of its interpretation of the insurance policies is similarly not arbitrary or capricious because it has articulated a satisfactory ex-

---

**5.** For purposes of these motions, this court may consider FEMA's explanation of its actions. *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ( "If ... there was such failure to explain adminis-

trative action as to frustrate effective judicial review, the remedy was ... to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision").

planation for its decision without a clear error in judgment. *See Motor Vehicle,* 463 U.S. at 43, 103 S.Ct. 2856.

B. *Overbilling.*

Although FEMA's duplicative benefits decision was not arbitrary or capricious, FEMA may not collect the full amount it is claiming. Of the $4,743,900 in issue, the State claims that the ACOE overbilled FEMA approximately $2,257,667 ($64,857 + $1,915,038 + $277,772 = $2,257,667) and that the State should not have to pay FEMA for these amounts. Record, Vol. 1, at 20 ("An addition error was discovered which resulted in an over billing of $64,-857"); Record, Vol. 1, at 242 ("There is a calculation error in the Kauai High School Gym bill in the amount of $64,857"); Record, Vol. 14, at 66 (indicating that the ACOE may have overbilled $1,915,038); Record, Vol. 11, at 206–207 (indicating that the ACOE may have submitted duplicate bills totaling $277,772).[6] As shown below, however, FEMA has demonstrated that any overbilling was, at most, $64,857.

1. *$64,857*

With respect to the $64,857 alleged over-billing, FEMA has stated, "If there was in fact an error in addition, FEMA will not require the State to reimburse the amount attributable to that error." Defendants' Opposition to Plaintiff's Counter Motion for Summary Judgment and Defendants' Reply in Support of their Motion for Summary Judgment at 6. FEMA admitted at the hearing on the present motions that it had made a mathematical error and that it was not seeking payment of the $64,857.

Accordingly, that amount must be subtracted from the amount FEMA claims the State owes it.

2. *$1,915,038*

The State claims that the ACOE overbilled FEMA approximately $1.9 million on two contracts: DACW83–92–0303 and DACW83–92–0304. The contract cost for DACW83–92–0303 was $3,169,752,[7] but the total cost on that project was $4,262,-877, a difference of $1,093,125.[8] Record, Vol. 14, at 92–93; *see* Declaration of Sean Dowling (October 12, 1999) ¶ 5(a). The contract cost for DACW83–92–0304 was $2,503,783, but the total cost was $3,172,-833, a difference of $669,050.[9] Record, Vol. 14, at 85–86; *see* Dowling Decl. ¶ 5(b). The combined overbilling alleged on the two contracts is $1,762,175. The remaining difference from the alleged $1.9 million was accounted for by an 8.08% administrative fee.[10] With respect to this $1.9 million alleged overbilling, FEMA claims that the discrepancy is explained by contract modifications, interest, and travel costs. *See* Dowling Decl. ¶¶ 3–7. A review of the record indicates that the contracts were, in fact, modified, and that those modifications accounted for the difference in billings. Record, Vol. 14, at 85–86 and 92–96 (Contract and Modification Records). Accordingly, FEMA's decision to pay the ACOE the $1.9 million in issue and to seek reimbursement of that amount from the State was not arbitrary or capricious.

3. *$277,772*

The $277,772 alleged overbilling consists of the following: (1) $12,207 for

6. The State argues that the ACOE's overbilling on this matter actually amounted to $284,616. However, as the ACOE refunded $6,844, *see* Record, Vol. 11, at 206, 209–10, the State's argument that the ACOE overbilled FEMA $284,616 is $6,844 too high.

7. This amount is listed as $3,169,751 at Record, Vol. 14, at 93.

8. The State believes that the final amount billed was actually $4,272,104, which would make the difference $1,102,352. *See* Record, Vol. 14, at 2.

9. The State believes that the final amount paid on the contract was $3,173,308, a difference of $669,525.

10. According to the State's figures, the $1,915,038 in alleged overbilling consists of the $1,102,352 on the first contract, $669,525 on the second contract, and $774,942 in administrative fees ($1,915,038 + $1,102,352 + $774,942 = $1,915,038). *See* Record, Vol. 14, at 2.

B02933017, an amount allegedly also included in B12923999; (2) $3,858 for B04933017, an amount allegedly also included in B04933999; (3) $89,413 for B03933016, an amount allegedly also included in B04933999; (4) $171,921 for B06933015; and (5) $373 for B07933015 ($12,207 + $3,858 + $89,413 + $171,921 + $373 = $277,772).[11] *See* Record, Vol. 11, at 206–07.

The $12,207, $3,858, and $89,413 alleged overbillings appear to have been only bills submitted in the improper form, not amounts billed twice. Indeed, FEMA recognized that, if rebilled in the correct form, those billed amounts had to be paid to the ACOE. *See* Record, Vol. 11, at 207 ("The only way to correct the error in FEMA's accounting records would be for the Corps to refund payments . . . and rebill the charges"). Thus, FEMA cannot be said to have been arbitrary or capricious in determining that the State was responsible for reimbursing FEMA for these billings.

FEMA determined that the $171,921 and $373 alleged overbillings (totaling $172,294) were properly charged to the State. FEMA examined those billings and noted that they had been billed to the wrong account. *See* Record, Vol. 11, at 206–07. This error did not affect the legitimacy of the amount of the ACOE's bills. As the State does not establish that the amounts were overbilled, and as FEMA has shown a rational basis for its determination that these amounts were owed to the ACOE, FEMA cannot be said to have been arbitrary or capricious.

III. *CONCLUSION.*

FEMA's determination that the State owes it $12,102,524 is supported by evidence sufficient to show that FEMA did not act arbitrarily or capriciously in making this determination.

11. FEMA argues that the "State acknowledges that FEMA addressed what it characterizes as a possible overbilling of $284,616." FEMA's Opp. at 5. However, the State only

However, an additional $64,857 originally demanded by FEMA is an admitted error and is not owed by the State.

The State's summary judgment motion is therefore granted to the extent it seeks a determination that FEMA was arbitrary and capricious in billing the state $64,857 of the $12,167,381 in issue. In all other respects, the State's motion, which conceded that the State owed $7,423,481 but contested the charge of an additional $4,743,900, is denied. FEMA's cross-motion is granted to the extent it seeks a determination that the State owes it $12,-102,524, but denied to the extent it seeks an additional $64,857.

The clerk of the court is directed to enter a judgment partly for the State and partly for FEMA as noted above.

IT IS SO ORDERED.

acknowledged that $6,844 of the $284,616 has been reimbursed by the ACOE to FEMA, leaving $277,772 still in dispute.